UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY G. GILL,

                                  **Plaintiff,**

                      v.                                    9:01-CV-323
                                                                         (FJS/DEP)

V. HOADLEY, J. GIANNOTTA,
CRAIG GUMMERSON, WALTER PELC,
RODNEY ASHBY, L. VANDERWERFF,
MR. FRANCZEK, G. GIBSON,
LT. QUINN, JOHN J. BURNS, J. BURGE,
and HANS WALKER,

                                  **Defendants.**
_____

**APPEARANCES**                                          **OF COUNSEL**

**ANTHONY G. GILL**
**94-A-8208**
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, New York 12821
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                **DAVID L. COCHRAN, AAG**
**STATE ATTORNEY GENERAL**
Executive Chambers
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      At all relevant times, Plaintiff was a practicing Jehovah's Witness and an inmate at the

Auburn Correctional Facility. Jehovah's Witnesses meet on Monday and Friday evenings for approximately two hours at that facility.

Plaintiff was subject to keeplock confinement on five separate occasions between January 19, 2001, and May 25, 2001. Pursuant to Department of Corrections' policy, an inmate on keeplock status may request permission to attend regularly scheduled religious services by writing to the facility's deputy superintendent of security or his designee forty-eight hours before the time of the scheduled service. During his five-months in keeplock, Plaintiff submitted requests to attend religious services on January 22 and 29, April 13 and 16, and May 7 and 14. Defendant Corrections Captain Gummerson denied all of Plaintiff's requests. In denying both of the January requests, Defendant Gummerson noted that Plaintiff had chronic disciplinary problems. Defendant Gummerson made similar notations on Plaintiff's May requests, adding the phrase "disruptive behavior." Although he could not attend religious services, Plaintiff was permitted to keep religious materials in his cell during his keeplock status.

As a result of Defendants' actions, Plaintiff filed a complaint, pursuant to 42 U.S.C. § 1983, in which he asserted claims of unlawful retaliation, violation of his Eighth Amendment rights resulting from deprivations he experienced under keeplock confinement, and impairment of his First Amendment rights based upon Defendants' denial of his requests to attend religious services.

On February 8, 2006, Magistrate Judge Peebles issued a Report and Recommendation in which he recommended that the Court grant Defendants' motion for summary judgment with respect to Plaintiff's religious free-exercise claims and dismiss Plaintiff's claim to recover compensatory damages. He also recommended that the Court reconsider its earlier decision to

dismiss Plaintiff's First Amendment retaliation claims against Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson and Franczek because intervening case law had invalidated the Court's prior determination. Both Plaintiff and Defendants filed objections to these recommendations.

## II. DISCUSSION

### A. Standard of review

The district court reviews *de novo* those portions of the magistrate judge's report-recommendation and order to which a party objects, *see Singleton v. Caron*, No. 9:03-CV-00455, 2006 WL 2023000, *1 (N.D.N.Y. July 18, 2006) (citations omitted), and for clear error those portions to which a party does not object, *see Stokes v. Artus*, No. 05 Civ. 1975, 2006 WL 1676437, *2 (S.D.N.Y. June 14, 2006) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). When reviewing a magistrate judge's report-recommendation and order, the district court "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Everson v. New York City Transit Auth.*, No. 1:02-cv-1121, 2007 WL 539159, *3 (E.D.N.Y. Feb. 16, 2007) (quoting 28 U.S.C. § 636(b)(1)).

### B. Plaintiff's First Amendment free-exercise claim against Defendant Burns

Personal involvement in an alleged constitutional deprivation is a *sine qua non* to an award of damages under 42 U.S.C. § 1983, *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted), because the doctrine of *respondeat superior* does not apply to claims for monetary damages under § 1983, *see id.* Thus, when he asserts a claim against a supervisory

official, a plaintiff must show **actual** personal involvement not "'mere linkage in the prison chain of command.'" *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quotation and other citation omitted).

An inmate may establish that a supervisory prison official was personally involved in an alleged constitutional violation and, therefore, liable under § 1983, in one of five ways:

> "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."

*Id.* at 435 (quotation and other citation omitted).

Magistrate Judge Peebles found that the record demonstrated that it was Defendant Gummerson, not Defendant Burns, who had the authority to decide whether to grant inmates' requests to attend religious services. *See* Report and Recommendation at 20. Therefore, he concluded that Defendant Burns was not personally involved in the alleged violation of Plaintiff's First Amendment right to exercise his religion.

Plaintiff does not object to this recommendation and, clearly, without a showing that Defendant Burns was personally involved in the alleged violation, Plaintiff cannot hold him liable for any such violations of his First Amendment rights. Accordingly, the Court adopts Magistrate Judge Peebles' recommendation and grants Defendants' motion for summary judgment with respect to Plaintiff's First Amendment free-exercise claim against Defendant Burns.

**C.     Plaintiff's First Amendment free-exercise claim against Defendant Gummerson**

Prisoners retain some constitutional protection under the Free Exercise Clause of the First Amendment. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974)). For instance, prisoners retain the right to attend religious services, *see Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert. denied,* 492 U.S. 909, 109 S. Ct. 3224, 106 L. Ed. 2d 573 (1989)); however, a valid penological concern may limit a prisoner's right to attend such services, *see id.* at 308-09. In order for a plaintiff to establish a First Amendment free-exercise claim, he must show (1) the existence of sincerely held religious beliefs, (2) a substantial burden on the exercise of those beliefs, and (3) that the action taken to thwart the exercise of those rights was not reasonably related to legitimate penological interests. *See Ford*, 352 F.3d at 588-96 (citations omitted). This reasonableness standard affords appropriate deference to the prison official's decision, *see Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989), and is "less restrictive than that ordinarily applied to alleged infringement of fundamental constitutional rights." *Salahuddin*, 993 F.2d at 308 (citing [*O'Lane v. Estate of Shabazz,*] 482 U.S. at 349, 107 S. Ct. at 2404-05).

Assuming that he can establish the first two elements of such a claim, to be successful, a plaintiff need only prove that the defendant's refusal to allow him to attend religious services was not reasonably related to a valid penological interest. *See Ford*, 352 F.3d at 595 (citing *Turner*, 482 U.S. at 89, 107 S. Ct. 2254). To determine if a regulation meets a valid penological concern, the court must weigh a variety of factors, including whether there was a valid and rational relationship between the deprivation and the legitimate government interest justifying it. *See id.*

Not surprisingly, courts have found that prison officials have a valid interest in maintaining order and that part of maintaining order is punishing unruly inmates to deter future misbehavior. *See Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (citing *Turner*, 482 U.S. at 89, 107 S. Ct. 2254). Additionally, the court should consider whether the prisoner had other means available to him to exercise his right and should take into account the consequences of accommodation, including the burden on staff and resources. *See id.* (citations omitted).

Applying these principles, Magistrate Judge Peebles found that Defendants' denial of Plaintiff's requests to attend religious services was in accordance with prison policy and that the factors that led Defendant Gummerson to deny these requests were the same factors that led to Plaintiff's keeplock confinement and, thus, based upon legitimate penological concerns. *See* Report and Recommendation at 17-18. Therefore, Magistrate Judge Peebles recommended that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's First Amendment free-exercise claim. *See id.* at 27.

Plaintiff objects to this recommendation, arguing that, but for the "frivolous" misbehavior reports that led to his keeplock confinement, he would have been able to attend religious services. *See* Plaintiff's Objections at 3. Plaintiff further maintains that Defendants' reasons for not allowing him to attend religious services while he was in keeplock confinement – harassment, creating disturbances, and refusal to obey orders – were the subject of pending prison-rule violations that had not been adjudicated and should not have served as the basis for denying his petitions to attend religious services. *See id.* at 4. Thus, Plaintiff contends that Defendants had no valid penological reason to deny his petitions. *See id.* at 5.

The Court agrees with Magistrate Judge Peebles' conclusion that there was a valid

connection between Defendants' refusal to allow Plaintiff to attend religious services and the prison's interest in maintaining order. Plaintiff had been cited for numerous behavior infractions, some of which culminated in his keeplock status. *See* Plaintiff's Amended Complaint at Exhibits "A," "B," "D," "E," "K," & "L," denied petitions dated 04/23/01, 05/07/01, 05/14/01. Moreover, although Defendants did not allow Plaintiff to attend religious services while he was in keeplock confinement, they did allow him to practice his religion by permitting him to keep a Bible and other religious materials with him in his cell. Finally, it is clear that allowing Plaintiff to leave his cell to attend religious services would have imposed a burden on prison staff by negating the deterrence value of keeplock confinement. *Cf. Salahuddin v. Harris*, 657 F. Supp. 369, 378 (S.D.N.Y. 1987) (citations omitted) (holding that First Amendment rights need not be honored when they are inconsistent with "'legitimate penological interests in deterrence, rehabilitation or security'" (quotation and other citations omitted)). Accordingly, the Court adopts Magistrate Judge Peebles' recommendation and grants Defendants' motion for summary judgment regarding his First Amendment Free Exercise Clause claim against Defendant Gummerson.

**D.    Plaintiff's claim for compensatory damages for mental anguish and emotional distress**

Under 42 U.S.C. § 1997e(e), if a prisoner seeks compensatory damages for mental or emotional injury, he must first show that he sustained a physical injury. *See* 42 U.S.C. § 1997e(e). If the plaintiff cannot make this showing, the court must dismiss his claim for damages to the extent that it relates to his claimed mental or emotional injury pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Birth v. Pepe*, No. 98 CV 1291, 1999 WL

684162, *1 (E.D.N.Y. July 21, 1999) (quotation omitted).[1]  However, a plaintiff does not need to show physical injury to recover nominal damages, punitive damages, or declaratory or injunctive relief.  *See Orraca v. McCreery*, No. 9:04-CV-1183, 2006 WL 1133254, *7 (N.D.N.Y. Apr. 25, 2006) (citation omitted).

Based upon these well-established principles, Magistrate Judge Peebles concluded that Plaintiff was not entitled to compensatory damages for any mental anguish or emotional distress he may have suffered because he had not shown the requisite physical injury.  *See* Report and Recommendation at 21-22.  In his objections, Plaintiff contends that he did not seek compensatory damages for mental anguish or emotional distress.  *See* Plaintiff's Objections at 12-13.

Since there is nothing in the record to indicate that Plaintiff suffered any physical injury as a result of Defendants' alleged actions, the Court adopts Magistrate Judge Peebles' recommendation and grants Defendants' motion to dismiss Plaintiff's claim for compensatory damages for mental anguish and emotional distress.

---

[1] The United States District Court for the Eastern District of Michigan has held that the physical-injury requirement of 42 U.S.C. § 1997e(e) is unconstitutional as applied.  *See Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 816 (E.D. Mich. 2006).  The *Siggers-El* court stated that applying "§ 1997e(e) to bar mental or emotional damages would effectively immunize officials from liability for severe constitutional violations, so long as no physical injury is established."  *Id.*  The court found that this result "would be at odds with the fact that the statute allows plaintiffs to recover unlimited mental or emotional damages, so long as they prove more than *de minimis* physical injury."  *Id.*  In reaching this conclusion, the court found a hypothetical in the plaintiff's brief very persuasive.  *See id.*  That hypothetical posited that a prison official could stage mock executions of prisoners – firing an unloaded gun at them – in which case "[t]he emotional harm could be catastrophic but would be non-compensable.  On the other hand, if a guard intentionally pushed a prisoner without cause, and broke his finger, all emotional damages proximately caused by the incident would be permitted."  *Id.* (citation omitted).

**E.       Plaintiff's First Amendment retaliation claim**

In his May 21, 2003 Report and Recommendation, Magistrate Judge Peebles recommended that the Court dismiss Plaintiff's First Amendment retaliation claims. *See* Report and Recommendation at 24. This Court adopted that recommendation. *See id.* Subsequently, the Second Circuit issued its decision in *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004), in which the court stated that a prisoner alleging retaliation need only show that the prison official's actions, viewed objectively, "'would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *See* Report and Recommendation at 24-25 (quotation omitted). In light of *Gill*, Magistrate Judge Peebles concluded that this Court's earlier dismissal of Plaintiff's retaliation claims was no longer valid. *See id.* at 25 (citing *Shrader v. CSX Trasp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1991)). Consequently, Magistrate Judge Peebles recommended that the Court reinstate Plaintiff's claims of retaliation against Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson, and Franczek. *See id.* at 27.

In his objections, Plaintiff asserts that, in addition to reinstating his retaliation claims against Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson, and Franczek, the Court should also reinstate these claims against Defendants Ashby, Quinn, Burge, and Walker. *See* Plaintiff's Objections at 8. In addition, Plaintiff notes that Magistrate Judge Peebles failed to reinstate his pendent state claim under New York State Correction Law § 138(4). *See id.* at 9.

Defendants object to Magistrate Judge Peebles' recommendation and argue that the Court should deny Plaintiff's motion for reinstatement as untimely. *See* Defendants' Objections at 1. Specifically, Defendants state that Plaintiff moved for reinstatement nearly two years after the Order dismissing the complaint and more than one year after the change of law that is the basis

for Plaintiff's motion.

Furthermore, Defendants claim that Plaintiff did not move for reconsideration within the ten days mandated in Local Rule 7.1(g). *See id.* at 4. In the alternative, Defendants argue that Plaintiff's motion is untimely under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. *See id.* Finally, Defendants request that, if the Court reinstates Plaintiff's retaliation claims, the Court allow them three months to conduct discovery. *See id.* at 2, 6.

Under Local Rule 7.1(g), unless Rule 60 of the Federal Rules of Civil Procedure mandates otherwise, a party must serve a motion for reconsideration within then days of entry of the challenged judgment. *See* L.R. 7.1(g); *United States v. Chiochvili*, 103 F. Supp. 2d 526, 528 (N.D.N.Y. 2000). However, courts have the power to reconsider their own decisions prior to final judgment. *See Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). Factors justifying reconsideration include a change of controlling law and prevention of injustice. *See Brown v. Middaugh*, No. 96-CV-1097, 1999 WL 242662, *1 (N.D.N.Y. Apr. 21, 1999) (citation omitted); *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (quotation and other citations omitted). The moving party must demonstrate that the controlling decision would alter the court's prior conclusion. *See Agway, Inc. Employees' 401(K) Thrift Inv. Plan v. Magnuson*, No. Civ. A. 5:03 CV 1060, 2006 WL 436065, *2 (N.D.N.Y. Feb. 22, 2006) (quotation omitted).

In the present case, Defendants' reliance on Rules 59 and 60 of the Federal Rules of Civil Procedure to support their claim that Plaintiff's motion for reconsideration is untimely is misplaced. These rules apply only to final judgments. *See Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1092 (E.D.N.Y. 2006) (citation omitted). A judgment is not final unless the

court disposes of the entire controversy between the parties. *See Fed. Trade Comm'n v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 215 n.1 (1952) (Black, J., dissenting) (citation omitted). Since there is no final judgment in this case, Rules 59 and 60 do not bar Plaintiff's motion.

Moreover, in the present case, there are compelling reasons to ignore Local Rule 7.1(g)'s ten-day deadline. Most importantly, the Second Circuit issued its decision in *Gill*, which altered the controlling law, *see Brown*, 1999 WL 242662, at *1; *New York City Dep't of Soc. Servs.*, 709 F.2d at 789, more than ten days after the Court issued its prior decision in this case. In addition, *pro se* plaintiffs are entitled to certain latitude. *See Jemzura v. Pub. Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (citing *McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986)). As a *pro se* incarcerated litigant, it would have been extremely difficult, if not impossible, for Plaintiff to move for reconsideration within ten days given his limited resources and access to up-to-date case law.

In conclusion, because Plaintiff is proceeding *pro se* and *Gill* invalidated the Court's prior decision, the Court adopts Magistrate Judge Peebles' recommendation and grants Plaintiff's motion to reinstate his First Amendment retaliation claims against Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson, and Franczek.[2] Furthermore, rather than addressing the issue of whether the Court should allow Defendants more time in which to conduct discovery regarding

---

[2] Although Plaintiff urges the Court to reinstate his retaliation claims against Defendants Ashby, Quinn, Burge, and Walker, *see* Plaintiff's Objections at 8, he has failed to show that these Defendants were personally involved in the alleged constitutional deprivation, *see* Plaintiff's Amended Complaint at 15-18; *see also Wright*, 21 F.3d at 501. Moreover, Plaintiff does not claim any First Amendment violation against Defendant Walker in his amended complaint. *See* Plaintiff's Amended Complaint at 11-18. Therefore, the Court denies Plaintiff's request to reinstate his retaliation claims against these Defendants.

these claims, the Court refers this issue, together with all discovery matters, to Magistrate Judge Peebles.

### F.     Plaintiff's state-law claim under New York Corrections Law § 138(4)

In his February 8, 2006 Report and Recommendation, Magistrate Judge Peebles did not mention Plaintiff's state law claim under New York Corrections Law § 138(4). However, in his previous Report and Recommendation, prior to the Second Circuit's decision in *Gill*, Magistrate Judge Peebles recommended that the Court decline to exercise its supplemental jurisdiction over Plaintiff's state-law claim. *See* Report and Recommendation dated May 21, 2003, at 39 n.12. On January 9, 2004, the Court adopted Magistrate Judge Peebles' findings but did not specifically mention Plaintiff's state-law claim.

In his objections, Plaintiff requests that the Court reinstate his state-law claim against each Defendant.

A federal court may exercise supplemental jurisdiction over a state-law claim when that claim arises out of the same facts upon which the federal claim is based. *See Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (citations omitted). Moreover, when a federal court reinstates a federal claim, the court may reinstate the previously dismissed state-law claim that arose out of the same set of facts. *See id.*; *see also Primetime 24 Joint Venture v. Nat'l Broad., Co., Inc.*, 219 F.3d 92, 104 (2d Cir. 2000) (citation omitted).

New York Corrections Law § 138(4) provides that "[i]nmates shall not be disciplined for making written or oral statements, demands, or requests involving a change of institutional conditions, policies, rules, regulations, or laws affecting an institution." N.Y. Corr. Law § 138(4)

(McKinney 2007). Since the Court is reinstating Plaintiff's First Amendment retaliation claims against Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson, and Franczek, the Court reinstates his state-law claims against these Defendants.

### III. CONCLUSION

After carefully reviewing Magistrate Judge Peebles' Report and Recommendation, the parties' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' February 8, 2006 Report and Recommendation is **ADOPTED IN ITS ENTIRETY**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's First Amendment free-exercise claims against Defendants Gummerson and Burns is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's claim for compensatory damages for mental anguish and emotional distress is **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's motion to reinstate his First Amendment retaliation claims is **GRANTED** with respect to Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson and Franczek and **DENIED** with respect to Defendants Ashby, Quinn, Burge and Walker; and the Court further

**ORDERS** that Plaintiff's motion to reinstate his state-law claims pursuant to New York Corrections Law § 138(4) is **GRANTED** with respect to Defendants Hoadley, Gianotta, Pelc, Vanderwerff, Gibson and Franczek and **DENIED** with respect to Defendants Ashby, Quinn,

Burge, and Walker; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Peebles for all further pretrial matters, including Defendants' request for further discovery regarding Plaintiff's First Amendment retaliation claims.

**IT IS SO ORDERED.**

Dated: May 4, 2007
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge